**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

_____
                                                          )
WALKER DIGITAL, LLC,                    )
                                                          )
       Plaintiff,                               )
                                                          )   Civil Action No. 1:10cv212 (JFA)
v.                                                        )
                                                          )
CAPITAL ONE SERVICES, LLC, et al.    )
                                                          )
       Defendants.                            )
_____)


**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Capital One is entitled to summary judgment of non-infringement because its accused Card Lab system did not satisfy either the "price" or the "calculation" limitations of the Asserted Claims.  Capital One's constructions of those disputed claim limitations are fully supported by the patents in suit.  Indeed, Walker's own expert Ronald Mann concedes that Capital One's proposed construction of the key disputed phrase "calculating a price" is consistent with the preferred embodiment described in the patents in suit.[1]  By contrast, Walker's constructions, which continue to evolve even during the course of this briefing, deviate substantially from the patents in suit.  Faced with the likelihood of losing on claim construction, Walker asserts several dubious infringement arguments for the first time in its opposition brief, some of which directly contradict Walker's past contentions.  None of Walker's new arguments is sufficient to overcome the problems with its theory of infringement.  Importantly, there is no dispute about the central facts that support summary judgment:  that the terms of every account offered through Card Lab were pre-designed and fixed, and the operation of the Card Lab software did not permit the alteration or modification of any of those pre-determined accounts.  For these reasons, the Court should grant summary judgment to Capital One.

## I.      THE CALCULATION OF A FEE OR CREDIT FOR A CUSTOMIZED CREDIT ACCOUNT IS AT THE HEART OF THE PATENTED INVENTION

As Capital One discussed in Defendants' Motion for Summary Judgment of Non-Infringement ("MSJ Mem.") (MSJ Mem.at 7-9), the calculation of a price for a *customized* credit account is at the heart of the patented invention.  The Abstract of the '478 patent supports this view:

> An apparatus, method, and program for customizing credit accounts and **calculating an appropriate price** for this customization.  Customers with existing credit accounts and customers applying for new accounts can customize

---

[1] Mann Report ISO Walker's Opp. at ¶ 23 ("Applying Capital One's proposed constructions, this embodiment falls within the "calculating a price" phrase both either literally or equivalently" (citing '478 patent at 6:48-8:54)).

> various parameters of their accounts, **in exchange for a fee** to be collected by the credit issuer.  The fee may depend on the particular set of parameters selected by the customer.

(emphasis added).  The specification later explains that the issuer may calculate a credit or that the calculated fee can be zero.  ('478 patent at 8:14-21.)  The Abstract thus provides an objective description of the patented invention that should guide the Court in construing the Asserted Claims.  *See, e.g., Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398-99 (Fed. Cir. 2008) (construing disputed claim limitations in light of Abstract of patent).

Walker argues, to the contrary, that the novelty of the patented invention is simply that it permits customers to choose terms of a credit account, and that the calculation of a fee or credit is not required.  (*See* Opp. at  6-7.)  Walker's simplistic view of the patents is inconsistent not only with the Abstract, but also with the basic description of the patented invention in the specification of the patents.  For example, the Summary of the Invention section of the patents begins as follows:

> One aspect of the invention is **a data processing apparatus for pricing a credit account** having at least one customer specified credit parameter. This apparatus includes a CPU and a memory containing a program, to be executed by the CPU, for receiving the credit parameters and calculating a price for a corresponding credit account.

> Another aspect of the invention is **a method of pricing a credit account** having at least one specified credit parameter.  The method includes the steps of receiving the credit parameters, calculating a price for a corresponding credit account, and outputting the price.

(emphasis added).  The Summary of the Invention thus makes it clear that the patented invention is not an apparatus and method by which a customer selects terms of an account, but rather an apparatus and method *for calculating a price for a credit account* customized with one or more customer-specified parameters.  The Court should construe the disputed terms of the Asserted

Claims with that fact in mind.  *See, e.g., Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001) (construing claim terms in light of patent's Summary of the Invention section).

## II.    THE PRICE TERMS SHOULD BE CONSTRUED TO MEAN A ONE-TIME FEE OR CREDIT FOR MODIFYING OR ENTERING INTO A CREDIT ACCOUNT

As Capital One has explained (MSJ Mem. at 17-22), the Price Terms contemplate a one-time fee or credit for modifying or entering into a credit account.  Walker contends, however, that the Price Terms should be construed to mean "an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account."  Capital One shows below that all of Walker's arguments in support of its construction are meritless.

### A.    Walker's Proposed Construction of the Price Terms Is Inconsistent with the Patents' Use of the Word "Price" in the Specification and Claims

Walker's proposed construction of the Price Terms is plainly inconsistent with the patents' use of the term "price" in both the specification and the claims.  The patents use "price" in the following ways:

- "Price = Base x Adjustment = \$30 x 96%=\$28.80." ('478 patent at 7:57.)
- "[T]he price or fee may be zero." (*Id*. at 8:18.)
- "[T]he price may be tripled for customers with a bad credit rating [or] doubled for customers with an average credit rating." (*Id*. at 8:3-5.)
- The apparatus according to claim 8, wherein said program in said memory is adapted . . . to charge the customer the calculated price by debiting the customer's credit account.  ('478 claim 14.)
- The method according to claim 41, further comprising the steps of: . . . adding the price to the credit balance.  ('478 claim 42.)

In none of these instances is the price "expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer," as Walker's construction requires.

Indeed, Walker fails to cite a single example in the specification where the price is expressed as composite credit or account parameters.[2]

Walker contends, nonetheless, that its proposed construction "fully conforms to the specification" because "the patent describes the price paid after all the relevant exchanges of value have been considered and netted out." (Opp. at 19.) This argument fails for at least two reasons. First, the patents never mention anything about considering and netting out "relevant exchanges of value." Second, and even more fundamentally, Walker's proposed construction of "price" is not "an amount paid after all the relevant exchanges of value have been considered and netted out" – and actually conflicts with that phrase. Walker's construction requires that the price be *expressed* as composite account parameters, not that the composite account parameters be considered and netted out.[3]

**B.      Walker's Argument that a Fee of Zero Cannot Be a "Price" Is Meritless**

Walker argues that because the patents say that the fee (or credit) may be zero in some cases, it cannot be a "price" within the meaning of the patents. (*See* Opp. at 8-9.) This argument is meritless. The specification expressly states that a calculated sum of zero is a "price":

> Thus, the phrase "calculating the price", or equivalent phraseology used herein to describe an exchange of value for a change in credit terms, contemplates not only the computation of a price to be paid by the customer, but also circumstances in which **the price** or fee **may be zero**, or even where the credit issuer may provide a payment or credit to the customer for accepting new terms more favorable to the credit issuer.

('478 patent at 8:14-21(emphasis added).)[4]

---

[2] If the phrase "expressed as composite credit or account parameters" – which appears nowhere in the patents – has any meaning, it must mean that all of the terms of an account – APR, introductory APR, annual fee, rewards, credit limit, minimum payment, late fees, over limit fees, etc. – must be stated or "expressed."

[3] Capital One notes that Walker did not contend in its Infringement Contentions that any of the account parameters displayed in Card Lab, such as rewards packages and annual fees, should be considered and netted out to arrive at the "price" of a Card Lab account.

[4] Capital One does not argue, as Walker inaccurately states in its Opposition, that "there is always a dollar fee to be paid or a dollar credit to be received by the customer if the invention is practiced." (Opp. at 9.) Capital One argues,

### C.      Walker's Argument that the Patentee Redefined "Price" Is Meritless

Walker argues that the patentee was his own lexicographer with respect to the term

"price," defining it to mean "an exchange of value for a change in credit terms."  (Opp. at 17-18

(citing 8:14-15).)  Walker makes this argument conclusorily, citing only a small excerpt from the

paragraph below:

> In some instances, the price of modifying the account may be zero. For example,
> if a customer wants to increase his minimum monthly payments by 30%, the
> credit card company may modify his account for free.  A card issuer may even be
> willing to pay a customer to change the terms of his account when the new terms
> are more profitable for the issuer.  Thus, the phrase "calculating the price", or
> equivalent phraseology used herein to describe an exchange of value for a change
> in credit terms, contemplates not only the computation of a price to be paid by the
> customer, but also circumstances in which the price or fee may be zero, or even
> where the credit issuer may provide a payment or credit to the customer for
> accepting new terms more favorable to the credit issuer.

('478 patent at 8:8-21.)

To be his own lexicographer with respect to a term, the patentee must show with "reasonable

clarity, deliberateness, and precision" that he intends to redefine it.  *Merck & Co. v. Teva*

*Pharms. USA, Inc.*, 395 F.3d 1364, 1370-72 (Fed. Cir. 2005).  In the paragraph above, the

patentee states that the phrase "calculating the "price" – *not* the word "price" – is used "to

describe" – not "to mean" – an exchange of value *for a change in credit terms*.  This statement

plainly does not redefine the word "price," much less with the necessary reasonable clarity,

deliberateness, or precision.

The broader context in which the statement is made further confirms that the patentee did

not redefine "price" to mean an "exchange of value."  The sentence from which Walker quotes

states that "the phrase 'calculating the price' . . . contemplates" three things – "a price to be paid

by the customer," a "price or fee of zero," and "a payment or credit to the customer" – each of

---

rather, that the system must calculate some dollar amount – i.e., a price.  Whether the calculated price is $0.00 or a
positive or negative amount is immaterial.

which is just a fee or credit.  Moreover, the fact that the sentence begins with the word "Thus" suggests that what is stated therein follows from the preceding sentences.  The preceding sentences explain that if the customer wants account terms that are neutral or beneficial to the credit issuer, the price can be a fee of zero or even a payment to the customer – i.e., a one-time fee or credit.

Thus, read as a whole, the paragraph above supports Capital One's construction by stating that the "price" that is calculated can be a fee from the customer, a credit to the customer, or, in some cases, $0.00.  Contrary to Walker's representations, the paragraph does not redefine "price" as an "exchange of value for a change in credit terms," much less as "an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account," as Walker construes it.[5]

### D.   Walker's Use of Expert Testimony to Support Its Construction of the Price Terms is Meritless

#### 1.   Walker's Expert Testimony is Improper

"Only in the relatively rare instance where the intrinsic evidence is insufficient to resolve ambiguous claim language may a court look to evidence extrinsic to the patent, *e.g.*, expert testimony, as an interpretive aid."  *Swimways Corp. v. Overbreak, LLC*, 354 F. Supp. 2d 637, 641 (E.D. Va. 2005).  In its opposition brief, Walker states that "[t]he specification settles this issue" regarding the proper construction of price.  (Opp. at 17.)  Capital One agrees that the specification settles the issue – but not in Walker's favor.  Accordingly, it is improper to consider Walker's expert testimony as an interpretive aid to vary what the specification teaches.  *Id.*

---

[5] Walker provides no explanation for why, if the patentee actually specially defined "price" as an "exchange of value for a change in credit terms," Walker now asks this Court to construe "price" as something completely different, i.e., "an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account."

### 2.      Walker's Expert Testimony Is Unreliable

The Federal Circuit has stated that expert testimony is "less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (*en banc*).  For example, "[e]xtrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence.  The effect of that bias can be exacerbated if the expert is not one of skill in the relevant art." *Id.*

Capital One's recent deposition of Walker's expert Ronald Mann bears witness to the unreliability of Walker's expert testimony.  Mr. Mann testified early in the deposition that he was not a person of skill in the art.   (Malloy Decl., Exh. A at 34:17-19.)  Nonetheless, he opines on the meaning of the Price Terms.  During his deposition, Mr. Mann admitted that Walker's construction of the Price Terms was given to him by Walker's lawyers:

> Q.  Did you come up with the language that is in paragraph 26 in the quote or is that something that was given to you by the lawyers?
> A.  Yes it is something that is given to me by the lawyers.

(*Id.* at 69:5-9.)[6]  Mr. Mann did not know why Walker's lawyers added certain language to what he says is the way one of ordinary skill in the art would interpret "price":

> Q.  In your proposed construction of the term price in paragraph 26 of your report you have the clause "together with any fee or credit for modifying or entering into the credit account."  Do you know why that clause was added to the construction?
> A.  I don't.

(*Id.* at 70:11-16.)  Mr. Mann's deposition testimony also squarely contradicted claims made in his expert report, where he stated:

---

[6] Paragraph 26 of Mr. Mann's expert report in support of Walker's claim construction motion states: "Based on the above, it is my view that one of ordinary skill in the art in 1997, reading the Walker patent, would have understood the term 'price' in the context of a credit card account to mean: 'An exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account.'"  (D.I. 42-2.)

First, the great majority of the prior art cited in the Walker Patents relates to credit card products and consumer use of them.  Several of the patents to which both patents refer are specifically directed to credit card products (5297026, 5477040, and 5513250), and substantially all of the dozens of items of non-patent prior art relate to credit card products.  Most tellingly, the most common sources for the non-patent prior art are leading industry periodicals such as Credit Card Management, Cards International, and American Banker.  The person best placed to understand the invention's contribution would be a person familiar with the prior art.

(D.I. 42-2, ¶ 12.)  And in his Appendix, Mr. Mann claimed that he "consulted" the cited prior art.

(D.I. 42-2.)  But during his deposition, Mr. Mann testified:

> Q.  Do you think that the prior art as cited in the patent is consistent with your [interpretation of] the term price?
> A.  I'm not sure that prior art is relevant to my interpretation of the term price without looking at it.  And you're right, I didn't look at it.

(Malloy Decl., Exh. A at 84:3-7.)  Given the fact that Mr. Mann did not look at the prior art that he said he consulted in his expert report – and the fact that "the person best placed to understand the invention's contribution would be a person familiar with the prior art" (D.I. 42-2, ¶ 12) – the Court should give no weight to Mr. Mann's testimony.

### 3.   Mr. Mann's Deposition Testimony Supports Capital One's Construction

Once Mr. Mann focused his testimony on the patent claims, he supported Capital One's construction, not Walker's.  Mr. Mann admits that a "price" in the context of the patents is a single one-time up-front monetary fee:

> Q.  Is the price in claim four [of the '478 patent] the aggregate of the financial attributes of the credit card product?
>
> A.  I think it depends on how the – I think claim four contemplates a particular – it's a dependent claim that contemplates a particular type of change.  I think that claim four it contemplates that the only change, **the price for a credit card having the credit parameter in the third subparagraph of claim one is a single one-time up-front monetary fee and that I think in that context the single one-time monetary fee is the price for the credit account having the credit parameter**.

(Malloy Decl., Exh. A at 41:2-12 (emphasis added).)[7]   In addition, Mr. Mann testified that he believes that the term "price" is used consistently throughout the patents:

> Q.   Well, the word price does appear several times in the patent, correct?
> A.   Yes.
> Q.   Are you aware of any opinion why the term should be given a different meaning on different occasions of its being used in a patent?
> A.   I think it is used consistently throughout.

(*Id.* at 1:17-23.)  Mr. Mann's admission that "price" does not always refer to composite account parameters in the credit industry – and is in fact used in the patents in suit to refer to a one-time monetary fee – supports Capital One's proposed construction and undermines Walker's.

### 4.  Walker's Expert Testimony Is Inapposite Because the Price Terms Require a Price <u>For</u> a [Proposed] Credit Account, not a Price <u>Of</u> a [Proposed] Credit Account

The Price Terms in all of the Asserted Claims require a "price *for* a [proposed] credit account."  Moreover, the Abstract describes the patent as "an apparatus, method and program for customizing credit accounts and calculating an appropriate price *for* this customization." (emphasis added).  "Customers with existing credit accounts and customers applying for new accounts can customize various parameters of their accounts, in exchange *for* a fee to be collected by the credit issuer."  (emphasis added).  Similarly, the Summary of the Invention states that the invention is directed to ". . . calculating a price *for* a corresponding credit account."  ('478 patent at 2:43-44 (emphasis added).)  The patents' use of the word "for" in these instances makes clear that the price is something that a customer pays to purchase an account and that it is separate from the account itself.

---

[7] Mr. Mann also testified that "[t]he word price in the English language and the specification and in the industry which the patent writes is used to mean the information that is relevant to the thing you are talking about."  (Malloy Decl., Exh. A at 73:11-15.)  Given Mr. Mann's testimony, Walker's criticism of Capital One for using general dictionary definitions in support of its construction of "price" (Opp. at 14-17) is misplaced.  Capital One also notes that though Walker accuses Capital One of "adopting just one of several potential dictionary definitions" (Opp. at 16), Walker fails to provide a single definition of "price" from a dictionary or any other documentary source to support its interpretation of "price" to mean "an exchange of value expressed as composite credit or account parameters."

In a subtle effort to interpret the Asserted Claims in light of Card Lab, Walker relies on expert testimony that asserts that "skilled persons understood the 'price' *of* a credit card account to include all the pieces of value that a credit card company gives to a customer and all of the things that a credit card company charges that customer . . . ."  (D.I. 44 at 12 (emphasis added).; *see also id.* at 13 ("[B]oth Mr. Srednicki and Prof. Mann agree that "[a] person of ordinary skill in the art in 1997, reading the Walker patents would understand the term 'price' *of* a credit account to mean:  'An exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the account.'"  (emphasis added).)  Thus, the "price" Walker and its experts have in mind is not a price *for* a new or modified credit account, but rather all of the benefits that will flow to or from the customer and issuer over the lifetime of the account.  That is clearly not the way "price" is used in the Asserted Claims, which are directed to calculating a price *for* a change in credit account terms, not *of* the account as a whole.

## E.    Walker's New Interpretation of the Price Terms Conflicts with the Interpretation It Asserted in Its Amended Infringement Contentions

Walker's construction of the Price Terms continues to evolve in a tortuous effort to find infringement.  In its Reply Brief regarding claim construction, Walker elaborates on what it (currently) means by that complicated construction:

> Under Walker's construction, price is <u>based</u> on those parameters, **the price is not the parameters themselves**.  Walker's construction doesn't say: "price means the composite credit or account parameters." Rather, Walker's construction says price means: "an exchange of value expressed as the composite credit or account parameters."

(Markman Reply at 8 (emphasis added).)  Walker's new interpretation of its construction of the Price Terms conflicts with what Walker previously said in its Amended Initial Disclosure of Asserted Claims and Infringement Contentions:

**The price, i.e., the set of account parameters**, in addition to the account parameter requested by the customer, that Capital One was willing to offer a customer, are those that are not "grayed-out" by the computer program, i.e., the parameter chosen by the customer of "2 miles per $1 charged," the introductory APR on purchases of "0% until April 2009" and "0% until October 2009," the variable APR's of "8.9% and "9.9%," and the annual fee of "$39."
(MSJ Mem., Ex. C at 38 (emphasis added).)

As demonstrated in Figures 4-15 and as discussed above, **the price, i.e., the set of credit parameters**, in addition to the credit parameter requested by the customer, that Capital One was willing to offer a customer, is proposed to the customer in the display presented to the customer.
(*Id*. at 52 (emphasis added).)

Walker's inability to articulate or support a coherent, consistent theory of its interpretation of the Price Terms is a simple result of the fact that the patents in suit are unrelated to the Card Lab system it accuses of infringement.  The Court should reject Walker's litigation-driven construction of the Price Terms and adopt Capital One's construction.

## III.   THE CALCULATION LIMITATIONS SHOULD BE CONSTRUED TO REQUIRE THE COMPUTATION OF A PRICE USING A MATHEMATICAL FORMULA

As Capital One explained in its opening brief, the ordinary meaning of "calculate" is to compute using a mathematical formula.  (MSJ Mem. at 23.)  Furthermore, the specifications confirm that the Calculation Limitations require the computation of a price using a mathematical formula.  (*Id*. at 24.)  In addition, the patents disparage and disavow systems that offer pre-designed cards with pre-determined sets of terms.  (*Id*. at 25-26.)  All of Walker's opposition arguments to the contrary are meritless.

A.     **Walker's Argument that the Ordinary Meaning of "Calculate" Does Not Require a Computation Using a Mathematical Formula Is Meritless**

Walker contends without merit that "Capital One selectively adopts a narrow dictionary definition" of "calculate."  (Opp. at 22.)  As ostensible support for its contention, Walker cites a single dictionary definition that defines "calculate" as follows: "to ascertain or determine by mathematical processes esp. of some intricacy."  Strikingly, this definition is inconsistent with Walker's proposed construction, which requires a mere ascertainment of any kind, avoiding any reference to "mathematical processes," and is consistent with Capital One's, which requires a determination using a mathematical formula.  The fact that Walker could not find a single reference to support its proposed construction of the Calculation Limitations is telling.

Walker also contends without merit that Capital One's construction of "calculate" does not comport with "the ordinary meaning as understood by a person of ordinary skill in the credit card arts at the time of the invention."  (Opp. at 22.)  Notably, Walker cites no evidence regarding the ordinary meaning of "calculate" to a person of ordinary skill in "the credit card arts."  Thus, the argument that Capital One's construction deviates from that meaning is baseless.

B.     **Walker's Argument that the Specification Describes Embodiments in Which a Price is Not Computed Using a Mathematical Formula is Erroneous**

Walker concedes that the patents describe calculations that involve a computation using a mathematical formula.  (Opp. at 21.)  Walker contends, however, that the patents describe two examples in which the calculation of a price does not involve a computation using a mathematical formula.  (Opp. at 21-22.)  This is not so.

Walker first cites the following: "For example, if a customer wants to increase his minimum monthly payments by 30%, the credit card company may modify his account for free." ('478 patent at 8:9-11.)  Walker asserts conclusorily that "[n]o 'computation' is performed in that example."  (Opp. at 22.)  As Capital One discussed earlier, the sentence simply clarifies that the

result of the price calculation can be zero.  It says nothing whatsoever about how the price of zero is calculated.  Moreover, the example is perfectly consistent with Capital One's proposed construction of the Calculation Limitations; a computation using a mathematical formula can easily result in zero.  Finally, without a computation of the price, Walker's example of an issuer making a change for free falls within the scope of the prior art, as the patent itself makes clear. ('478 patent at 1:54-56 ("[B]anks have been known to waive an annual fee at the request of a card holder, or even reduce the interest rate of an account.").)[8]

Walker also cites claim 1 of the '230 patent, which requires "comparing the at least first requested account parameter with a set of available parameters to calculate a price."  Walker argues that because a comparison is used to calculate the price, the price is not computed using a mathematical formula (Opp. at 22), but provides no support for its fallacious conclusion that a comparison precludes a computation using a mathematical formula.  Indeed, as Capital One discussed in its opening brief (MSJ Mem. at 8-9), the mathematical formulas described in the patent are *based on* a comparison of the customer-requested account parameter(s) with pre-existing account parameters.  (*See, e.g.,* '478 patent at 6:66-7:57 (reciting mathematical formulas based on the differences between the terms of a new account requested by an existing customer and the customer's old account).)  For these reasons, Walker's argument that the patents describe calculations that do not involve computations using mathematical formulas is meritless.

## C.   Walker's Argument that the Patentee Disparaged and Disavowed Only Systems in Which Customers Are Presented With Available Credit Cards, as Opposed to Available Credit Card Terms, Is Meritless

Walker concedes that the patents disparage systems in which customers face a "'yes/no' decision on acceptance of each offered credit card."  (Opp. at 8.)  Walker contends, however,

---

[8] Walker's contention that its patents cover a customer asking to increase his minimum monthly payments by 30% and the credit card company allowing him to do so demonstrates just how far Walker is seeking to stretch the claims of the patents in suit.

that the patents disparage only systems in which customers are "presented with available credit cards, rather than available options for terms of a credit account." (*Id.*)  The patents make no such distinction.  In fact, they admit that the prior art included accounts with "different combinations of interest rates, credit limits, and annual fees" that were promoted by emphasizing certain terms of the account.  ('478 patent at 1.29-41.)  In contrast, the patents describe a method of customizing and pricing a credit account, not a card-presentation or card-selection tool.[9]  Consequently, Walker's admission that the patents disparage systems in which customers face a "yes/no" decision on acceptance of each offered credit card is dispositive here.  The Asserted Claims cannot be construed to cover systems that offer only pre-designed credit cards with pre-determined sets of terms that cannot be altered by the customer.[10]  How a credit issuer presents its credit cards to customers is immaterial to both the patents in suit and to this lawsuit.

### D.    Walker's Contention that the Patents Describe An Embodiment with a Pre-Designed Credit Account is Erroneous

Walker further contends that the patents in suit describe an embodiment with a "pre-designated credit account."  (Opp. at 7 (citing '478 patent at 7:17-48), 23.)  That is not true.  The section of the patent that Walker cites provides an example of the calculation of a fee for modifying a credit account of an existing customer.  (*See* '478 patent at 6:55-7:57.)  In that example, the customer specifies several changes to his account, including a 2% lower interest rate (*id.* at 6:66-67), and the patented system calculates a fee of $28.80 for the customer's modified account.  (*Id.* at 7:48-57.)[11]  That fee is calculated, using a mathematical formula, based

---

[9] As seen here, Walker errs in interpreting the patents in light of Card Lab, thus grossly distorting them.

[10] *See, e.g., Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1332-33 (Fed. Cir. 2009); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319-20 (Fed. Cir. 2006); *AstraZeneca AB v. Mutual Pharm. Co., Inc.*, 384 F.3d 1333, 1340-41 (Fed. Cir. 2004); *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340-45 (Fed. Cir. 2001).

[11] The system allows the customer to specify *any* interest rate.  (*See* '478 patent at 6:59-7:3 (reciting the mathematical formula Base = Change in Interest Rate x Average Balance x Expected Customer Life, where these multiplicands are variable and unknown prior to the customer's request for a modified account).)

on the individual customer's average historical balance of $500.  (*Id.* at 6:66-7:3; 7:55-57.)

Clearly a credit account with a customer-created interest rate and a fee calculated based on the

customer's individual average account balance is not a "pre-designated credit account," as

Walker claims.[12]  The patent nowhere says that the account having the changes sought by the

customer was "pre-designated"; rather, this is what the patents call "customizing."  (*Id.* at 8:50.)

## IV.   CARD LAB DID NOT INFRINGE THE ASSERTED CLAIMS BECAUSE IT DID NOT SATISFY THE PRICE TERMS

The Price Terms, present in each Asserted Claim, require a one-time fee or credit for

entering into or modifying a credit account.  Walker concedes that Card Lab did not allow

modification of a credit account.  Moreover, Walker asserted numerous times in its Amended

Infringement Contentions that Card Lab did not involve a fee or credit for entering into a credit

account.  (*See, e.g.,* MSJ Mem., Ex. C, at 28 ("There was no fee or credit for entering into the

credit account.").)  It follows that Capital One is entitled to summary judgment, because it did

not satisfy the Price Terms of the Asserted Claims.  (*See also* MSJ Mem. at 27.)

### A.   Walker's New Position that There Was a Fee or Credit for Entering into a Card Lab Account Should Be Disregarded, Because It Is the Opposite of the Position Walker Took in Its Amended Infringement Contentions

Flip-flopping on the position it took in its Amended Infringement Contentions, Walker

now contends that Card Lab did involve a one-time fee or credit for entering into a credit

account.  (Opp. at 24-25.)  According to Walker's most recent position, *all* Card Lab accounts

had a one-time fee or credit of $0.00.  Walker did not make this allegation in its Amended

Infringement Contentions.  To the contrary, Walker alleged the exact opposite – "[t]here was no

---

[12] Walker contends that "[t]he only difference between the Card Lab system and the exemplary embodiment described at column 7 of the '478 patent is" that Card Lab involves graying out of terms. (Opp. at 7 n. 8.)  That is nonsense.  Column 7 details the calculation of a fee of $28.80 for a modified credit account.  Card Lab did not allow existing customers to modify their accounts.  Moreover, as Walker has noted several times, "[t]here was no fee or credit for entering into" a Card Lab account.  (MSJ Mem., Ex. C, *passim*.)  Obviously there was no calculation of a fee or credit, given that there was no fee or credit.  Furthermore, the credit account discussed in column 7 has a uniquely specified interest rate, whereas all the terms of the Card Lab accounts were fixed and pre-determined.

fee or credit for entering into the credit account."  (MSJ Mem., Ex. C, *passim*.)  The Court should not permit Walker to amend its infringement contentions yet again, in the middle of summary judgment briefing, during the week of the hearing on Capital One's motion for summary judgment. [13]  *See Safeclick, LLC v. Visa Int'l Serv. Ass'n*, 208 Fed. Appx. 829, 833-36 (Fed. Cir. 2006) (affirming summary judgment of noninfringement where district court refused to consider theory of infringement not raised in patentee's infringement contentions); *Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-CV-131, 2004 WL 5633736, at *1 (E.D. Tex. Apr. 24, 2004) ("The requirement in issue in this case, that a party state its preliminary infringement contentions shortly after the initial case management conference is specifically designed to require parties to crystallize their theories of the case, and to prevent a 'shifting sands' approach to patent litigation.").  The Court should disregard Walker's new theory – the exact opposite of its prior theory – that Card Lab involved a fee or credit for entering into a credit account.

### B.      There Was No Fee or Credit for Entering into a Card Lab Account

Regardless, there was no one-time fee or credit for entering into a Card Lab account.  The Court should see through Walker's contrived argument as a last-minute, litigation-driven effort to evade summary judgment.  Walker's new interpretation of the Price Terms, in which a system that does not calculate a fee is the same as a system that calculates a fee to be $0.00, is improper because it renders meaningless the words "calculate" and "calculating" in the Asserted Claims.  *See Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (claim limitation should not be construed to render it "functionally meaningless"); *Bicon Inc. v.*

---

[13] Capital One reminds the Court that Walker has already amended its contentions with respect to the Price Terms once without cause.  Walker's amendment occurred *16 days after* Capital One served its disclosure of its claim constructions, which include Capital One's construction of the Price Terms.  Strikingly, Walker added its language stating that "there was no fee or credit for entering into a credit account" as part of that amendment to its Infringement Contentions.  In other words, Walker took the position that Card Lab did not involve a fee or credit for entering into a credit account with full knowledge of Capital One's proposed construction of the Price Terms and non-infringement argument based on that construction.  In light of these facts, Walker's attempt to flip-flop on its position here is even more egregious and desperate.

*Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (same).  Under Walker's theory, taking a

walk has a fee of $0.00.  The Court will easily see through this litigation conjuring.  There is a

plain conceptual difference between things that do not involve a price (e.g., Card Lab and walks)

and things that do involve a price, which happens to be calculated to be $0.00 in some cases

(e.g., the systems described in the patents in suit).  (*See* '478 patent at 8:8-21.)

**C.     Walker's New Position Regarding the Price Terms Makes No Sense in Light of the Asserted Claims as a Whole**

All of the Asserted Claims require that the "price" for a credit account be *calculated*.

(*See* MSJ Mem., Appendix.)  As discussed above, Walker contends that "calculated" means

"ascertained."  But Card Lab plainly does not "ascertain" $0.00.  Nor does Walker contend that it

does in either its Amended Infringement Contentions or its briefing.  Similarly, all of the

Asserted Claims of the '478 patent require the output of a price, and all of the Asserted Claims of

the '230 patent require the submission of a proposal including the price to a customer.  (*See id.*.)

But Card Lab does not output or submit a proposal that includes $0.00, and nowhere does

Walker contend that it does.  For these additional reasons, the Court should reject Walker's new

position regarding the Price Terms and grant summary judgment. [14]

**V.     CARD LAB DID NOT INFRINGE THE ASSERTED CLAIMS BECAUSE IT DID NOT SATISFY THE CALCULATION LIMITATIONS**

As discussed above and in Capital One's opening brief (MSJ Mem. at 22-26), the

Calculation Limitations should be construed to require the computation of a price using a

mathematical formula.  In addition, the Calculation Limitations should be construed to exclude

systems that make available pre-designed credit accounts with pre-determined terms.  Even if the

Court were to adopt Walker's construction of the Price Terms, Capital One is entitled to

---

[14] Capital One would be entitled to summary judgment even if Walker's new theory were valid, because Card Lab clearly does not satisfy the Calculation Limitations and output/proposal limitations of the Asserted Claims.

summary judgment of infringement because Card Lab did not satisfy either of these two requirements of the Calculation Limitations.

### A.     Card Lab Did Not Satisfy the Calculation Limitations Because the Patents Disavow Systems Offering Pre-Designed Cards with Pre-Determined Terms

As Capital One explained in Section III.C above and in its opening brief (MSJ Mem. at 25-26 & 29), the patents disparaged and purported to overcome the drawbacks of systems like Card Lab that make available pre-designed credit cards with pre-determined terms.  In so doing, the patents disavowed such systems from the scope of the claims, thus precluding a finding that Card Lab literally infringed the Asserted Claims.[15]  Furthermore, Walker is barred as a matter of law from recapturing that disclaimed subject matter through the doctrine of equivalents.[16]  For these reasons alone, Card Lab did not satisfy the Calculation Limitations as a matter of law, and Capital One is entitled to summary judgment.

### B.     Card Lab Did Not Satisfy the Calculation Limitations Because It Did Not Compute a Price Using a Mathematical Formula

Since at least January 20, 2010, when Capital One filed its Counterclaims in this case, Walker has been aware of Capital One's position that the Calculation Limitations require the computation of a price using a mathematical formula.  (*See* D.I. 10 at ¶ 19 ("Using a mathematical formula, the issuer calculates a price, or fee, that a customer will have to pay for a credit account with those specific terms."))  Capital One's position has never changed.  On May 14, 2010, in its initial disclosures, Capital One formally construed the Calculation Limitations to require the computation of a price using a mathematical formula.  Sixteen days later, Walker amended its Infringement Contentions by proposing a new construction of the Price Terms and revising its infringement claim charts.  Even though Walker was fully aware of Capital One's

---

[15] *See AstraZeneca*, 384 F.3d at 1340-41; *Edwards*, 582 F.3d at 1332-33; *Honeywell*, 452 F.3d at 1319-20; *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d 1331, 1339-40 (Fed. Cir. 2006); *SciMed*, 242 F.3d at 1340-45.
[16] *See, e.g., AstraZeneca*, 384 F.3d at 1342; *Honeywell*, 452 F.3d at 1321.

construction of the Calculation Limitations at that time, Walker did not allege in its Amended

Infringement Contentions that Card Lab computed a price using a mathematical formula.  (*See*

MSJ Mem. Ex. C, *passim*.)[17]  The first time Walker made that allegation is in its opposition brief

filed earlier this week.  (Opp. at 25-27.)  Walker's failure until now to assert its theory that "set

intersection" is a mathematical formula, within the context of the patents, and that Card Lab used

set intersection to compute a price is procedurally outrageous and extremely prejudicial.  The

Court should disregard Walker's new theory and grant summary judgment of non-infringement.

*See Safeclick*, 208 Fed. Appx. at 833-36; *Motorola,* 2004 WL 5633736, at *1.

Regardless, Walker's new calculation theory is invalid.  As a matter of law, the Court

should resolve the dispute over whether the Calculation Limitations include "set intersections"

during its construction of the Asserted Claims.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.

Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (When "parties raise an actual dispute regarding the

proper scope of . . . claims, the court, not the jury, must resolve that dispute.").  To this end, even

if set functions were used, there is no suggestion that they are used to calculate a price *for* the

credit account or *for* changes in the terms of a credit account.  Furthermore, every mathematical

formula described by the patents is an ordinary, arithmetical formula in which numbers are

multiplied or added in order to generate another number – the price.  Set intersections are never

mentioned in, and in fact are completely irrelevant to, the patents in suit.  (*See* Shamos Decl., ¶

11.)  Accordingly, a person of skill in the art would not consider set intersection to be a

"calculation" within the meaning of the patents.  (*Id.*)  A person of skill would interpret the term

---

[17] In addition, Walker failed to set forth any support for its assertion that Card Lab infringed the Calculation
Limitations under the doctrine of equivalents.  Walker provided no support for that theory in its opposition brief
either; thus there is nothing for Capital One to rebut here.  Walker's conclusory assertion that Card Lab infringed the
Calculation Limitations under the doctrine of equivalents is insufficient to thwart summary judgment. *See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (party opposing summary judgment
must come forward with "specific facts" that demonstrate a genuine issue for trial).

"calculate" to refer to the ordinary, arithmetical formulas described in the patents (*id.*); thus, the Court should construe it as such.[18]  Since there is no dispute that Card Lab did not compute a price using an arithmetical formula, Capital One is entitled to summary judgment.

Furthermore, even assuming, *arguendo*, that set intersections are deemed to be mathematical formulas for present purposes, the indisputable fact is that Card Lab did *not* use set intersections.  (*See* Shamos Decl., ¶¶ 12-14.)  Capital One attaches the code Dr. Korf relies on in his declaration as an exhibit to this brief (Malloy Decl., Exh. B); the Court can see for itself that none of the code actually uses the set theory operations that Dr. Korf discusses in his declaration. The portion of the code Dr. Korf bases his declaration on – the "toggleOptionsSelect" function (highlighted in Malloy Decl., Exh. B) – is devoid of the set theory symbols (e.g., ∩ and ∪ ) that Dr. Korf contends Card Lab used.  Capital One's construction of the Calculation Limitations requires that the computation *use* a mathematical formula – not that it be capable of expression as a mathematical formula.

Finally, Dr. Korf does not claim that Card Lab used set intersections *to calculate a price*, and clearly it did not.  All of the sets of terms of the Card Lab accounts – including the fact that there was no fee to open an account – were predetermined:  they were not determined by any supposed set intersection operations in Card Lab.  For all of these reasons, Walker's theory fails, and Capital One is entitled to summary judgment of non-infringement.

## CONCLUSION

For the reasons stated above and in Capital One's opening brief (MSJ Mem.), Capital One respectfully requests that the Court grant summary judgment of non-infringement to Capital One.

---

[18] Notably, Walker supports its new Calculation theory with a declaration from the computer scientist Robert Korf, despite Dr. Korf's assertion that "[t]he inventions of the Walker patents are not in the computer science field." (Korf Decl. at ¶ 21.)  It should also be noted that Dr. Korf does not cite to the patents in suit once in his analysis.

Dated: May 27, 2010

Respectfully submitted,

/s/ John P. Corrado
John P. Corrado (VSB# 20247)
Joshua A. Hartman (VSB# 77894)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763
JCorrado@mofo.com
JHartman@mofo.com

Charles S. Barquist, *Pro Hac Vice*
Ryan J. Malloy, *Pro Hac Vice*
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, CA  90013
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
CBarquist@mofo.com
RMalloy@mofo.com

Attorneys for Defendants
CAPITAL ONE SERVICES , LLC;
CAPITAL ONE BANK (USA), N.A.; and
CAPITAL ONE FINANCIAL
CORPORATION

<u>**CERTIFICATE OF SERVICE**</u>

I, John P. Corrado, hereby certify that on this day, May 27, 2010, I will electronically file the foregoing document, **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,** using the CM/ECF system.

Copies of the same will be sent via electronic mail to:

Robert Carter Mattson
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT LLP
1940 Duke Street
Alexandria, Virginia 22314
Telephone:  (703) 413-3000
Facsimile: (703) 413-2220
RMattson@oblon.com

Roderick G. Dorman
Thomas B. Watson
Alan P. Block
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234
DormanR@hbdlawyers.com
WatsonT@hbdlawyers.com
BlockA@hbdlawyers.com

/s/ John P. Corrado
John P. Corrado (VSB# 20247)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763
JCorrado@mofo.com