IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WALKER DIGITAL, LLC, )
 )
Plaintiff, )
 )  Civil Action No. 1:10cv0212 (JFA)
v. )
 )
CAPITAL ONE SERVICES, LLC, *et al.*, )
 )
Defendants. )
_____)

## MEMORANDUM OPINION

In this patent infringement suit, plaintiff Walker Digital, LLC, ("Walker") the owner by assignment of all rights and interests in U.S. Patent Nos. 5,970,478 (the '478 patent) and 6,374,230 (the '230 patent) (collectively, the "Walker Patents"), sues defendants Capital One Services, LLC, Capital One Bank (USA), N.A., and Capital One Financial Corporation (collectively "Capital One") for direct infringement and willful infringement of the Walker Patents. The Walker Patents purport to cover a method, apparatus, and program for customizing credit accounts. The parties dispute the meaning of several claim terms and have requested that this court determine the proper construction of those terms in accordance with the Supreme Court's ruling in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

### Procedural History

On November 12, 2009, Walker initiated this action with the filing of a Complaint in the United States District Court for the Central District of California. (Docket no. 1). On January 13, 2010, prior to the filing of any responsive pleading, Walker filed its First Amended Complaint. (Docket no. 6). On January 20, 2010, Capital One filed its Answer (Docket no. 7) and Counterclaim (Docket no. 10). The counterclaims sought a declaratory judgment of non-

infringement and a declaratory judgment of invalidity for each of the Walker patents. On February 16, 2010, Walker filed its Answer to Capital One's counterclaims. (Docket no. 11). On March 2, 2010, the parties filed a joint stipulation for an Order transferring the case to the Eastern District of Virginia, Alexandria Division (Docket no. 12), which was granted the following day. (Docket no. 13). This action was transferred to this court on March 5, 2010, and the District Judge entered a Scheduling Order opening discovery and setting the case for an initial pretrial conference on March 31, 2010. (Docket nos. 15, 16).

On March 29, 2010, the parties consented to the exercise of jurisdiction by the undersigned for any and all proceedings in this case (Docket no. 28) and the case was referred to the undersigned by the District Judge (Docket no. 29). On March 31, 2010, an initial pretrial conference was conducted with counsel for the parties in attendance (Docket no. 31) and a Fed. R. Civ. P. 16(b) Scheduling Order governing discovery was entered (Docket no. 32). At the initial pretrial conference, the parties expressed an interest in proceeding with a claim construction hearing soon after the parties had exchanged Walker's initial disclosures of asserted claims and infringement contentions and Capital One's preliminary invalidity contentions.

On May 6, 2010, Walker filed its Motion for a *Markman* hearing and a memorandum in support of its motion and noticed it for a hearing on May 21, 2010. (Docket nos. 42-44). On May 10, 2010, the undersigned entered an Order continuing the *Markman* hearing from May 21, 2010 to May 28, 2010. (Docket no. 49). On May 13, 2010, Capital One filed a Motion for Summary Judgment, with its supporting memorandum, and noticed the motion for a hearing on May 28, 2010. (Docket nos. 54-56). On May 19, 2010, Capital One filed its opposition to Walker's *Markman* motion. (Docket no. 59). Walker filed its opposition to Capital One's motion for summary judgment on May 24, 2010 and a corrected version of the opposition on

2

May 25, 2010. (Docket nos. 60, 61). Walker also filed its reply to Capital One's opposition to Walker's *Markman* motion on May 25, 2010. (Docket no. 62). On May 27, 2010, Capital One filed its reply to Walker's opposition to Capital One's motion for summary judgment. (Docket no. 63).

On May 28, 2010, a *Markman* hearing was held before the undersigned. At that hearing, it was decided that the undersigned would issue his claim construction rulings prior to hearing argument on Capital One's motion for summary judgment.

## **Scope of Review**

In the landmark *Markman* case, the Supreme Court held that that the construction of patent claim terms is "exclusively within the province of the court." 517 U.S. at 372. This court recently had an occasion to summarize the law in this area, taking into account the Supreme Court's decision in *Markman* and the Federal Circuit's *en banc* ruling in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), in *Netscape Communications Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 678 (E.D. Va. 2009) (Ellis, J.):

> (i) Patent terms are presumed to have their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*); *see also Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Accordingly, "[s]uch a person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).
>
> (ii) To determine the ordinary meaning of a claim term that is not immediately apparent, a court, in its effort to understand the disputed term from the perspective of a person skilled in the art, may look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova*, 381 F.3d at 1116.

3

(iii) Generally, a court is instructed to consider the following hierarchy of evidence: claim language, other intrinsic evidence, and extrinsic evidence. *See Advanced Cardiovascular Sys. v. Medtronic*, 265 F.3d 1294, 1304 (Fed. Cir. 2001) ("As always, we begin our construction with the words of the claim. After looking to the claim language we consider the rest of the intrinsic evidence, that is, the written description and the prosecution history if in evidence.").

(iv) It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova*, 381 F.3d at 1115. It follows from this principle that "[t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370. Accordingly, a district court undertaking claim construction must "look to the words of the claims themselves . . . to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

(v) The inventor may act as his own lexicographer in coining or "reveal[ing] a special definition given to a claim term . . . that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. A patentee's desire to redefine a claim term apart from its ordinary and customary meaning must be clearly indicated. *See Sinorgchem Co. v. ITC*, 511 F.3d 1132, 1136 (Fed. Cir. 2007); *Vitronics*, 90 F.3d at 1582 ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").

(vi) With regard to intrinsic evidence, the specification is the "single best guide to the meaning of a disputed term" and is usually "dispositive," because the court's claim construction determination should not be inconsistent with the clear language of a specification. *Phillips*, 415 F.3d at 1315. In addition, a court may further consider the patent's prosecution history — known also as the patent's "file wrapper" — for the purpose of determining whether to "exclude any interpretation that was disclaimed during prosecution." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citation and quotation marks omitted).

(vii) It is a "cardinal sin" of patent law to "read[] a limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1340-41 (Fed. Cir. 2001). Although there is "a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification," it is well settled that a court may not "confin[e] the claims to those embodiments" found in the patent. *Phillips*, 415 F.3d at 1323. Indeed, the Federal Circuit has explicitly "rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment . . . because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* at 1323.

(viii) Comparison of disputed claim terms to other claims in the patent, both disputed and undisputed, is often illuminating because "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Concomitantly, differences among claims typically evidence the patentee's intent to distinguish claim terms, giving rise to the principle that "different claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008).

(ix) While courts are not required to construe every disputed term — for the overarching goal of claim construction is to aid the jury's understanding of claim terms, not to be an "exercise in redundancy" — "when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute" and "the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008).

*Id.* at 685-86 (footnotes omitted). It is these principles that this court will use to determine the proper construction of the disputed claims.

## Issues Presented

In the briefs submitted to the court, the parties have presented seven claim terms, or sets of claim terms, for construction. For each claim term, the parties submitted competing proposed constructions. Those claim terms, with the competing proposed constructions as set forth in their memoranda, are:

1. **"customer specified credit parameter" and "customer-selected account parameter"**

    Walker proposes a construction of: "A term of a credit account that is chosen by a customer."

    Capital One proposes a construction of: "A term of a desired credit account that is chosen by a customer."

5

2. **"customer information"**

   Walker proposes a construction of: "Facts about a customer or a customer's credit account."

   Capital One proposes a construction of: "Information which identifies the account of the customer."

3. **"proposal"**

   Walker proposes a construction of: "Something proposed."

   Capital One proposes a construction of: "A contractual offer."

4. **"price for a credit account" and "price for a proposed credit account"**

   Walker proposes a construction of: "An exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account."

   Capital One proposes a construction of: "A one time fee or credit for modifying or entering into a credit account."

5. **"calculating a price" and "calculate a price"**

   Walker proposes a construction of: "Ascertaining an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account."

   Capital One proposes a construction of: "Computing a fee or credit using a mathematical formula."

6

6. **"credit account"**

Walker proposes a construction of: "An account that allows a customer to buy goods or services from a merchant without cash and pay the issuer of the account at a later date." Capital One proposes a construction of: "An account wherein a lender (such as a bank) advances an amount of money in accordance with certain terms."

7. **"credit parameter" and "account parameter"**

Walker proposes a construction of: "A term of a credit account, such as the interest rate, credit limit and monthly minimum payment."

Capital One proposes a construction of: "A term (provision) of a credit account."

As the Federal Circuit discussed in *Phillips*, the ordinary and customary meaning of a claim term is the meaning that the term would have "to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. In this case the parties have been unable to agree on the field of the invention for the Walker Patents or who would be considered a "person of ordinary skill in the art in question at the time of the patent." Walker argues that the field of invention is "Credit Accounts" whereas Capital One proposes that the field of invention is "Computer Programming in the Financial Services and Commercial Sectors." Furthermore, Walker argues that the person of ordinary skill in the art in question at the time of the patents "would have been a VP level manager, with 10+ years experience in the credit and/or debit industry, with experience and/or interaction with others in the areas of acquisitions, advertising, communications, retention, finance, business planning and analysis, IT, credit policy, and general management (each of which interact regularly) and would have an MBA or equivalent educational background and that all of these areas are supported by IT professionals, including programmers." Capital One

argues that the person of ordinary skill in the art in question at the time of the patents would "be represented by an undergraduate degree in computer science, or equivalent experience, including at least one year of programming experience involving financial or commercial systems."

## Person of Ordinary Skill in the Art

In determining the level of ordinary skill in the art, courts look to the inventor's educational level[1], the nature of the field's typical problems, the skill required to grapple with the prior solutions to the field's problems, the pace of innovation in the field, the sophistication of technology, and the education level of people working in the field. *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983). The Walker Patents are titled "Method, Apparatus, and Program for Customizing Credit Accounts." The specification begins with a statement that the present invention relates generally to the field of "credit accounts" but then states more specifically that it relates to "a method, apparatus, and program for modifying the terms of existing credit accounts and customizing the terms of new credit accounts to meet specific customer needs." ('478 patent, Col 1:5-9). The specification highlights the fact that there are "no automated mechanisms known to us for determining when and how to make an adjustment to the account terms in order to retain a customer." ('478 patent, Col. 1:56-59). The summary of invention reflects "a data processing apparatus" and a "computer program" that allows for the receiving of credit parameters, calculating a price for a credit account and outputting the price. ('478 patent, Col. 2:38-49).

The expert opinions submitted by Walker on the issue of who would be a person of ordinary skill in the art are not persuasive. Initially, they do not address the factors usually

---

[1] Other than to describe one of the inventors as "one of America's best-known entrepreneurs" who holds 200 patents in multiple fields, there is nothing in the record detailing the two inventors' educational level or experience at the time the patent application was filed.

8

considered in making such a determination. Neither Mr. Srednicki nor Mr. Mann discuss the aspect of the invention relating to an *automated* method of customizing credit accounts. While knowledge in the field of credit accounts and their various parameters would be necessary to develop a sophisticated program to practice the "calculate the price" aspect of the invention, a person with some level of computer programming experience would be needed to reduce the Walker Patents to practice. Given the nature of the invention described in the Walker Patents, the court finds that the field of the invention is computer programming in the credit account industry. The court also finds that a person of ordinary skill in the art would be a person with at least an undergraduate degree in computer science and having several years of programming experience in the credit account industry.

## Claim Constructions

### 1. "Customer Specified Credit Parameter" and "Customer-Selected Account Parameter"

Walker proposes that the court construe these claim terms to mean: "[a] term of a credit account that is chosen by a customer." Capital One originally proposed that these claim terms be construed to mean "[a] term of a desired credit account that is chosen by a customer." However, in its opposition to Walker's *Markman* motion, Capital One states that it is willing to stipulate to Walker's proposed construction of these two claim terms. The court has reviewed these claim terms as used in claims 8, 16 and 18 of the '478 patent and claim 12 of the '230 patent and the specification and finds that Walker's proposed construction is supported by the intrinsic evidence presented to the court and is consistent with what a person of ordinary skill in the art would have ascertained from the intrinsic evidence. As such, the court construes "customer specified credit parameter" and "customer-selected account parameter" to mean "a term of a credit account that is chosen by a customer."

9

## 2. "Customer Information"

Walker proposes that this term should be construed to mean "[f]acts about a customer or a customer's credit account." Although it initially proposed that this term should be construed to mean "[i]nformation which identifies the account of the customer," Capital One has since withdrawn its objection to Walker's proposed construction. The court has reviewed this claim term as used in claims 9, 17 and 19 of the '478 patent and the specification and finds that Walker's proposed construction is supported by the intrinsic evidence presented to the court and is consistent with what a person of ordinary skill in the art would have ascertained from the intrinsic evidence. For that reason, the court construes "customer information" to mean "facts about a customer or a customer's credit account."

## 3. "Proposal"

In its moving papers Walker proffered that the claim term "proposal" be defined simply as "[s]omething proposed." Capital One disputes this assertion and instead offers that the claim term should be defined as "[a] contractual offer." The claim term "proposal" is not used in any of the claims in the '478 patent and it does not appear in the specifications for either of the Walker Patents. The claim term "proposal" does appear in claims 1, 2, 3, 12, 13 and 14 of the '230 patent. During the hearing on May 28, 2010, the court questioned counsel as to why they presented this claim term to the court for construction and the basis for their proposed constructions. During this hearing counsel for Walker conceded that there was no need to construe this term. Counsel for Capital One persisted in arguing for a specific definition of "a contractual offer" claiming that Figure 7 of the Walker Patents supports that construction because as shown in that diagram once the account price has been transmitted to the customer, the customer decides whether the account price is acceptable and if the answer is yes, the

customer's credit card is billed for the cost of the new account. The specification does not use the term "proposal" but it does describe a process that after the price information is submitted to the customer, the customer decides whether the price is acceptable and if he accepts the price, the system "can" process the "sale" or alternative methods of payment may be used. ('478 patent, Col. 8:22-38). Nothing in the specification states that the transmission of the price information to the customer constitutes a contractual offer. As argued by counsel for Walker, the acceptance of the price submitted by the customer could then prompt a final credit review by the issuer or the issuer may require actual receipt of payment before entering into a binding agreement.

The claim term "proposal" is a plain English, non-technical term and it derives no special meaning from either the patent or the specification. Neither party has presented evidence that the claim term "proposal" would have any special meaning to a person of ordinary skill in the art at the time of the invention. Any attempt to provide a construction of the claim term "proposal" would only result in the court functioning as a thesaurus and would not be of any assistance to the jury. The claim term "proposal," as it is used in the '230 patent, has its ordinary meaning and it is a term that would be familiar to a lay juror. As such, the court declines to construe the claim term "proposal."

### 4. "Price for a Credit Account" and "Price for a Proposed Credit Account"

Walker proposes that these claim terms should be construed to mean "[a]n exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account." Capital One disagrees with this proposed construction and instead proffers that the court should construe this term to mean "[a] one time fee or credit for modifying or entering into a credit account."

11

Initially, it is important to note that the court finds that there is no support for Capital One's proposed limitation that the fee be limited to "one time." This "one time" limitation can be found nowhere in either of the Walker Patents. Although the preferred embodiment and Figure 7 do indicate that the customer makes a determination as to whether the account price is acceptable, there is no indication of a limitation that this fee is charged only "one time." Indeed, it is possible that a customer could agree to pay a recurring fee in exchange for the ability to, as an example, keep her interest rate lower than it otherwise would be.

The court also does not find support for Walker's contention that the claim term "price for a credit account" should be construed in terms of "an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account." The somewhat convoluted definition Walker proffers more appropriately describes: a) a transaction (exchange of value), in the first part of the sentence; and b) that which is received in exchange for the price, in the second half of the sentence. Thus, Walker attempts to construe "price" to mean "everything in a transaction, including the transaction itself." This result does not comport with the ordinary meaning of the term "price." Walker argues that the patentee acted as his own lexicographer when he wrote that:

> the phrase 'calculating the price', or equivalent phraseology used herein to describe an exchange of value for a change in credit terms, contemplates not only the computation of a price to be paid by the customer, but also circumstances in which the price or fee may be zero, or even where the credit issuer may provide a payment or credit to the customer for accepting new terms more favorable to the credit issuer."

('478 patent, Col. 8:14-21). The key phrase here is "exchange of value for a change in credit terms." At its essence, this phrase describes a transaction whereby "value" is exchanged "for a change in credit terms." But it is important to note that the price is not the exchange of value in

12

this transaction. Rather, the price is the *amount* of value that is exchanged. This interpretation is reinforced by the patentee's willingness to interchange the words "price or fee" and the recognition that the price or fee could be zero.

The specification refers to a method of pricing a credit account including "receiving the credit parameters, calculating a price for a corresponding credit account, and outputting the price." ('478 patent, Col. 2:45-49). It also states that the price of modifying the account is based on the credit card parameters received from the agent terminal along with the customer parameters from the customer database. ('478 patent, Col. 6:49-52). The specification also discusses a "base price" ('478 patent, Col. 6:61) that is then adjusted taking into consideration desired changes to the parameters of the existing account and the "price" for the adjustments is then determined. ('478 patent, Col. 7:3-58). The specification also states that the "price calculated based on the credit parameters may also be modified by customer parameters." ('478 patent, Col. 7: 66-67). The preferred embodiment includes a process whereby the customer can trade off various parameters and after the customer revises the credit card parameters, "the new credit card parameters are processed by the system in the same way as the original credit card parameters to generate a new price." ('478 patent, Col. 8:43-48). For new accounts, the '478 patent acknowledges that are no pre-existing credit parameters on which the "price for opening a new account" can be based and suggests using a set of "standard parameters." ('478 patent, Col 8:65-67).

Given the consistent language used throughout the specification and taking into consideration what a person of ordinary skill in the art at the time of the invention would have considered these claim terms to mean in the context of the entire patent, the court construes the terms "price for a credit account" and "price for a proposed credit account" to mean "a fee or

13

credit (that may be zero) for modifying or entering into a credit account, based on the credit or account parameters."

## 5. "Calculating a Price" and "Calculate a Price"

Walker proposes that the claim terms "calculating a price" and "calculate a price" be construed to mean "[a]scertaining an exchange of value expressed as the composite credit or account parameters that a credit card issuer is willing to offer a customer, together with any fee or credit for modifying or entering into the credit account." Capital One proposes a construction "[c]omputing a fee or credit using a mathematical formula." Both Walker and Capital One base their proposed constructions of these claims terms on their proposed constructions of the claim terms "price for a credit account" and "price for a proposed credit account." Significantly, Capital One includes "computing . . . using a mathematical formula" in its proposed construction whereas Walker proposes "ascertaining an exchange of value." Thus, Walker proposes a broader construction of "calculate" that would permit the use of methods other than a computation for determining a price. As an example, Walker argues that if a customer wants to increase its minimum monthly payments by 30%, the issuer could make the change for free because the new terms are more favorable to the issuer. Walker argues that this new price – a fee of zero – is "calculate[ed] by simply ascertaining the trade-offs in the modified terms, without performing any 'computation' and without using a mathematical formula."

Since the court did not find Walker's "exchange of value" language to be an appropriate construction of "price" when that term is used with "for a credit account," it also finds that Walker's proposed language should not be adopted where the "price" is used in conjunction with "calculate." Walker cites three examples in the specification where a "price" is "calculated" and argues that these examples support its construction. In the first example, Walker notes that an

14

issuer may be willing to issue a credit card to someone with a poor credit history if the card has a low credit limit and a high annual fee. ('478 patent, Col. 2:60-67). In the second example, Walker notes that "[i]f a customer calls to cancel his account, the card issuer may be able to rewrite the terms of the customer's existing account and thereby entice him to stay." ('478 patent, Col. 3:1-5). In the third example, Walker notes that "[t]he invention also benefits credit card issuers by providing them with an opportunity to charge a fee for changing the terms of a customer's account." ('478 patent, Col. 3:6-8). The examples cited by Walker simply do not support its contention that the "price" is "calculated" by "ascertaining an exchange of value." Rather, the examples simply indicate how the invention may be used: to issue credit to people with poor credit histories; to rewrite accounts; and to the benefit of issuers. Tellingly, the claims consistently use the term "calculate" to mean that the invention uses a computation to determine a fee for the customization of a credit account. Capital One notes that the Walker Patents detail a calculation where "Price = Base x Adjustment = $30 x 96% = $28.80" and provide that other formulae may be used. ('478 patent, Col. 7:64-65).

Keeping in mind that the field of the invention is computer programming in the credit account industry, the court finds that Capital One's proposed use of the word "computing" is consistent with use of the term "calculate" in the Walker Patents. Each example and description of "calculation" contained in the Walker Patents contains some form of "computation." Furthermore, given that the invention involves an apparatus and program, any program used to calculate a price or fee would need to be written using some criteria. This computer program intended to generate a "price" for the customization of the accounts would need to have some pre-established criteria for determining how each modification of the credit parameters would affect the final price. This is precisely the method that is described in detail in the specification.

('478 patent, Col. 6:48-8:22). However, the court does not believe that it is appropriate to state in the construction that the "price" is "computed . . . using a mathematical formula." The specification does include examples of mathematical formulae but it does not limit the method of computing the price to mathematical formulae. Instructing the jury that a mathematical formula is required by the claim language may cause confusion.

Walker has proposed that these terms be construed so as to reference the fact that the calculation is undertaken with reference to the account parameters. The court finds ample support for this proposition (*e.g.* '478 Patent, Col. 6:48-52) even if it does not agree with Walker's phrasing. It is clear from the Walker Patents that every "calculation" conducted to determine the price is done with reference to the account parameters. This is critical, because without this limitation almost any type of computation could be read into the patent, when it is clear that it is the interplay between the various account parameters that is to be calculated when determining the price. For these reasons, the court construes the terms "calculating a price" and "calculate a price" to mean "computing a fee or credit (that may be zero) for modifying or entering into a credit account, based on the credit or account parameters."

### 6. "Credit Account"

Walker proposes that the claim term "credit account" be construed to mean "[a]n account that allows a customer to buy goods or services from a merchant without cash and pay the issuer of the account at a later date." Capital One disagrees with Walker's proposed construction and offers the alternative construction of "[a]n account wherein a lender (such as a bank) advances an amount of money in accordance with certain terms." The crux of the argument as it relates to this claim term is whether or not the term, as used in the Walker Patents, should be construed broadly enough to include credit accounts other than those used to purchase goods or services.

Thus, under Capital One's proposed construction, a "credit account" would include a mortgage account, a home-equity line of credit, and a personal loan. The court finds that a person of ordinary skill in the art at the time of the invention would not read this claim term so broadly in the context of the entire patent, including the specification.

The Walker Patents speak in terms of credit accounts that are "used throughout the world for non-cash payments of goods and services." ('478 patent, Col.1:10-11). In addition, although the independent claims refer only to "credit accounts," the specification describes these accounts as those that are used to purchase goods and services with payment to be made at a later date. It is important to note that the independent claims are not limited to credit cards. Rather they are defined in such a way that non-credit card credit accounts, such as a line of credit at a store, are also included. Every example in the Walker Patents related to the meaning of a "credit account" refers to those used to purchase goods and services. For these reasons, the court construes the term "credit account" to mean "an account that allows a customer to buy goods or services without cash and pay the issuer of the account at a later date."[2]

## 7. "Credit Parameter" and "Account Parameter"

Walker proposes that the court construe these claim terms to mean "[a] term of a credit account, such as the interest rate, credit limit and monthly minimum payment." Capital One proposes that the court construe these claim terms to mean "[a] term (provision) of a credit account." The parties agree that these terms refer to a term of a credit account and agree that both of these claim terms should have the same construction. Walker asserts, however, that the

---

[2] Capital One argues that the inclusion of "merchant" in Walker's proposed construction is improper because merchants do not sell services. In response Walker believes this is "harmless" but has suggested including "or service provider" in its proposed definition. The court finds that neither merchant nor service provider should be included in the definition to be presented to the jury.

17

parties disagree on whether there is a need to expand on the word "term" within their proposed constructions. Walker proposes that the construction include examples of some terms of credit accounts, taken directly from the specification, so as to prevent either party from confusing the jury by arguing that an unspecified feature is a "term" within the meaning of the construction. Capital One argues that the phrase "term of a credit account" is clear to a layperson and requires no further elaboration. Capital One also argues that Walker's construction, would likely confuse jurors by suggesting that only the three listed terms are parameters, or would cause them to question whether there is something special about the terms Walker recites.

The court is in agreement with Walker that the jury may be confused by the simple definition proposed by Capital One. The danger in a simple definition such as the one proposed by Capital One is that it may lead the jury to believe it understands what a "term" is when, in fact, it does not. The court believes that it is important to provide the jury with an example of a "term" to help it understand those provisions of a credit account that are "terms." However, the court also understands Capital One's concern that providing the jury with these three listed "terms" may cause the jury to place special emphasis on those "terms." The court believes it would better guide the jury to provide it with a single example of a term and explicitly state it may be one of several parameters. In that way, the jury may compare other proffered "terms" to that example to help them discern between those features of a credit account that are "terms" and those that are not, without placing special emphasis on a given set of "terms." For these reasons, the court construes the terms "credit parameter" and "account parameter" to mean "a term or provision of a credit account. For example, the interest rate may be one of several parameters of a credit account."

Accordingly, for the reasons stated herein, the disputed claim terms are determined to have the following constructions and the jury will be provided with the following constructions:

- "customer specified credit parameter" and "customer-selected account parameter" mean: "A term of a desired credit account that is chosen by a customer."

- "customer information" means: "Facts about a customer or a customer's credit account."

- "price for a credit account" and "price for a proposed credit account" mean: "A fee or credit (that may be zero) for modifying or entering into a credit account, based on the credit or account parameters."

- "calculating a price" and "calculate a price" mean: "Computing a fee or credit (that may be zero) for modifying or entering into a credit account, based on the credit or account parameters."

- "credit account" means: "An account that allows a customer to buy goods or services without cash and pay the issuer of the account at a later date."

- "credit parameter" and "account parameter" mean: "A term or provision of a credit account. For example, the interest rate may be one of several parameters of a credit account"

Entered this 8th day of June, 2010.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

19