**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| _____ ) | |
| WALKER DIGITAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:10cv212 (JFA) |
| v. ) | |
| ) | |
| CAPITAL ONE SERVICES, LLC, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| CAPITAL ONE SERVICES, LLC AND ) | |
| CAPITAL ONE BANK (USA), N.A. ) | |
| ) | |
| Counterclaimants, ) | |
| ) | |
| v. ) | |
| ) | |
| WALKER DIGITAL, LLC ) | |
| ) | |
| Counterdefendant. ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

## INTRODUCTION

In its Markman Order, the Court adopted slightly modified versions of Capital One's proposed constructions of the two most important claim limitations in this case: the "price" limitations and the "calculation" limitations. Under the Court's claim constructions, Capital One's accused Card Lab system did not infringe any of the Asserted Claims for essentially the same reasons that Capital One expressed in its opening and reply summary judgment briefs. Capital One submits this supplemental brief to address new infringement theories that Walker has put forth in two expert reports it served on June 16, 2010. Notably, these new infringement theories are nowhere to be found in Walker's Amended Infringement Contentions. In fact, Walker's new infringement theories completely contradict the allegations of fact it made in its Amended Infringement Contentions. Regardless, Walker's new infringement theories are meritless.

Two basic facts regarding Card Lab are dispositive here. First, Capital One did not charge a fee for entering into a Card Lab account, based on the account parameters (i.e., a "price"). Walker has previously admitted, in fact, that there was no fee for entering into a Card Lab account. Second, Card Lab did not compute (i.e., "calculate") a price, or indeed any term, for a credit account. All of the credit accounts offered through Card Lab were predesigned with sets of terms that were fixed and could not be altered or recombined by a user of Card Lab. Each of those accounts, and the combinations of terms making up each account, were predetermined by Capital One's credit team long before any prospective customer logged on to Card Lab. Card Lab simply looked up the account terms in an electronic database to locate cards whose predetermined collections of terms included one or more parameters selected by a customer. In

sum, Card Lab satisfied neither the "price" terms nor the "calculation" terms of the Asserted

Claims.  Accordingly, Capital One is entitled to summary judgment of non-infringement

## I.      CARD LAB DID NOT SATISFY THE PRICE TERMS OF THE ASSERTED CLAIMS

The Court has construed the terms, "price for a credit account" and "price for a proposed

credit account," to mean "a fee or credit (including a fee of zero) for modifying or entering into a

credit account, based on the credit or account parameters."  Walker argues that two aspects of

Card Lab satisfy these "price" terms:  1) the annual fee account parameter of some of the credit

accounts that were available through Card Lab; and 2) the absence of an upfront fee for any

account that was available through Card Lab.  These arguments are meritless.

### A.      The Annual Fee Term Was Not a "Price" Under the Court's Construction

Card Lab's annual fee term did not constitute a "price" under the Court's construction for

at least two reasons.  First, as Walker has admitted, the annual fee was not a fee for modifying or

entering into a Card Lab account.  Second, the annual fee was not *based on* the credit or account

parameters; rather, as Walker has admitted, it *was* an account parameter.

#### 1.      Card Lab's Annual Fee Did Not Constitute a "Fee for Modifying or Entering Into the Credit Account"

In a glossary on its website, Capital One defines "annual fee" as "a fee charged (on a

yearly basis) for the customer's continued participation in an open-end credit plan."  (Declaration

of Richard Elliott in Support of Supplemental Brief ("Elliot Decl.") at ¶ 4 & Exh. A.)  Similarly,

Walker's expert Ronald Mann previously characterized an annual fee as a component of a

package of fees and benefits for holding and using a card:

> In every realistic sense, the "price" for the card is the total package of ***fees and
> benefits that the cardholder pays and receives when it holds and uses the card***.
> *Any description of the "price" of the card that referred only to a single feature –
> the annual fee or the interest rate, for example – would be highly misleading.*

(Opp., Exh. 1 to Mann Decl. at ¶ 17.)[1]  In other words, an annual fee is a periodic fee for maintaining an account, analogous to the monthly fee one pays for holding a gym membership or cellular phone account.  It is not a fee for *entering into* an account.

Basic facts about annual fees illuminate why they cannot properly be characterized as fees for entering into credit accounts.  Generally, the payment of annual fees is connected not to a customer's opening of an account, but rather to a customer's holding and use of the account.  (*See* Elliott Decl. at ¶¶ 4-7; *see also* Elliott Dep. Tr., Hartman Decl. Exh. B, at 28:23-24 (referring to the "annual maintenance fee"); *id.* at 54:21.)  For example, if a customer enters into a credit account but never uses it to buy something, Capital One does not require the payment of any annual fee.  (*See* Elliott Decl. at ¶ 6.)  Furthermore, whether a customer pays an annual fee depends on whether the account is active each year.  For example, a customer pays the annual fee every 12 months, but only if the account is active at the time.[2]  These facts demonstrate that an annual fee is a fee for holding and using a credit account, not a fee for entering into one.[3]

Indeed, prior to the Court's issuance of its Markman Order, Walker admitted numerous times that an annual fee is not a fee for entering into a credit account.  As the Court will recall,

---

[1] Without offering any reason, principled or otherwise, for reversing his sworn testimony that describing the annual fee as the price would be misleading, Mr. Mann now falls into line with Walker's latest contentions and characterizes an annual fee as a fee for entering into a credit account.  (Hartman Decl., Exh. A (June 16, 2010 Expert Report of Ronald J. Mann ("Mann Report")) at ¶¶ 22-24.)  For the reasons discussed in Capital One's Reply in support of its summary judgment motion, Mann's testimony in this case is unreliable and should be disregarded.  (*See* MSJ Reply at 7-8.)

[2] This is another reason that the annual fee could not be a "price" calculated by Card Lab:  Card Lab did not, indeed could not, know how many years a prospective account would be opened, and therefore how much a customer would pay in annual fees, i.e., the annual fee times "X" years, where "X" could not be known in advance.

[3] By comparison, some credit-card issuers do charge a fee for entering into a credit account.  For example, First Premier Bank requires customers to pay a $95 processing fee, either in one lump sum or in several smaller payments, before the credit account is opened.  (*See* Elliott Decl. at ¶ 6 & Exh. B.)  As another example, the issuer of the American Octane Onyx card charges a $99 one-time setup fee debited from a customer's bank account at the time of approval in order to open a credit account.  (*see id.*, ¶ 6 & Exh. C.)

Walker amended its original infringement contentions in order to propose the following

construction of "price":

> An exchange of value expressed as the composite credit or account parameters
> that a credit card issuer is willing to offer a customer, *together with any fee or*
> *credit for modifying or entering into the credit account*.

(Plaintiff's Amended Initial Disclosure of Asserted Claims and Infringement Contentions, MSJ

Mem., Malloy Decl. Exh. C ("Am. Infr. Contentions") at 8 (emphasis added).  Applying that

construction to Card Lab, Walker stated the following:

> The price, i.e., the exchange of value expressed as the composite credit or account
> parameters that a credit card issuer is willing to offer a customer, are those terms
> that are not "grayed-out" by the computer program, i.e., the parameter chosen by
> the customer of "2 miles per $1 charged," the introductory APR on purchases of
> "0% until April 2009" and "0% until October 2009," the variable APR's of "8.9%
> and "9.9%," and the annual fee of "$39." All other previously available credit
> parameters, including all additional rewards and all APR's on transfers are
> grayed-out and are therefore unavailable for any credit account having, as a credit
> parameter, the basic reward of "2 miles per $1 spent."  **There was no fee or**
> **credit for entering into the credit account.**

(*Id.* at 9 (emphasis added).)  Thus, according to Walker's own Amended Infringement

Contentions, an annual fee was not a fee for entering into a Card Lab account; it was, instead,

one of the account parameters.  In fact, Walker's Amended Infringement contentions stated 48

times that there was no fee for entering into a Card Lab account.  (*Id.*, *passim*.)

However, when the Court issued its Markman Order, Walker reversed itself.  Walker now

alleges that an annual fee *is* a fee for entering into a credit account.  The reason for Walker's

about-face on this issue is plain to see.  Under Walker's proposed construction of "price," a fee

for entering a Card Lab account was unnecessary for infringement; all that was required was

some "exchange of value."[4]  Consequently, Walker expressed its genuine view that there was no

fee for entering into a Card Lab account.  Similarly, Walker saw no need to respond, in its

---

[4] Indeed, Walker amended its infringement contentions for the stated purpose of amending its construction of
"price" and applying that construction to Card Lab.  (*See* Dorman Decl. ISO Pl. Markman Mot., D.I. 62-1 at ¶ 10.)

opposition, to a footnote in Capital One's opening brief pointing out that Walker did not contend

that an annual fee was a fee for entering into a credit account.  (MSJ Mem. at 5 n. 4.)  Walker has

reversed course on this issue only because the Court's Markman Order forced it either to

withdraw its infringement allegations or to concoct new allegations that contradict its prior

allegations of fact.

The Court should decide this issue based on the facts Walker alleged in its Amended

Infringement Contentions.[5]  An annual fee was not a fee for entering into a Card Lab account.

### 2.     Card Lab's Annual Fee Was Not "Based on the Credit or Account Parameters"

Since the pleading stage of this case, Walker has consistently contended that an annual

fee is an account parameter (or term) of Card Lab accounts.  (*See, e.g.,* Walker's Answer to

Capital One's Counterclaims (D.I. 11) at ¶¶ 12, 13; Am. Infr. Contentions, *passim*).  The patents

make this fact clear as well.  (*See* '478 patent at 1:29-32 (listing an annual fee as one of various

account parameters).)  Nevertheless, Walker now argues that an annual fee is "based on" the

Card Lab account parameters "because it differs depending on the parameters that the customer

specifies."  (Mann Report at 4.)  This argument is fatally flawed on its face.  The Court did not

construe "price" as a fee or credit for modifying or entering a credit account, *depending on* the

parameters that the customer specifies.  Rather, the Court construed "price" as a "fee or credit for

---

[5] The requirement that a plaintiff serve infringement contentions is "specifically designed to require parties to crystallize their theories of the case, and to prevent a 'shifting sands' approach to patent litigation."  *Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-CV-131, 2004 WL 5633736, at *1 (E.D. Tex. Apr. 24, 2004).  Accordingly, courts frequently disregard infringement arguments made by patentees in opposition to summary judgment that were not set forth in their infringement contentions, and the Federal Circuit affirms those courts' findings of summary judgment of non-infringement.  *See, e.g.*, *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006) (affirming summary judgment of non-infringement where the district court refused to consider theory of infringement not raised in patentee's infringement contentions); *Safeclick, LLC v. Visa Int'l Serv. Ass'n*, 208 Fed. Appx. 829, 833-36 (Fed. Cir. 2006) (same).  Here, Walker not only failed to raise the theories on which it opposes summary judgment in its original or amended infringement contentions; it now completely contradicts them.  For these reasons, the Court should disregard Walker's new infringement theories.  *See Venetec Int'l, Inc. v. Med. Dev. Group, Inc.*, No. 06CV83, 2007 WL 2238475, at *4 (S.D. Cal. Aug. 3, 2007) (granting summary judgment of non-infringement where patentee's opposition arguments contradicted its infringement contentions).

modifying or entering a credit account, *based on* the credit or account parameters" – and both parties agree that the annual fee is itself a credit or account parameter.  Walker fails to explain how the annual fee could possibly be "based on" itself, as Walker alleges in a last ditch attempt to salvage its case.

This flaw in Walker's argument stems not just from a misreading of the Court's construction, but also from Walker's mischaracterization of the patents in suit.  In its summary judgment opposition, for example, Walker characterized the patented invention as simply a system and method that allows customers to select parameters of an account.  (*See* Opp. at 6-7.) Based on its inaccurate characterization of the patents, Walker argues that account parameters, such as the annual fee, are the "price."  But as the Court explained in its Markman Order, the patents teach a system and method for calculating a price *after* the parameters of the account are identified, and *based on* those parameters.  (Markman Order at 13.)  Furthermore, as Walker admits, an annual fee may be one of the customer-specified parameters of a customized account for which a price must be calculated in order to satisfy the Asserted Claims.  It is clear, therefore, that the "price" must be something other than an annual fee.  In sum, the annual fee term in Card Lab did not constitute a "price" because it was not based on the credit or account parameters.

### B.      The Absence of an Upfront Fee from Card Lab Is Not a "Price"

Walker argues that the absence of an upfront fee in the accounts available through Card Lab constitutes a fee for entering into a Card Lab account.  (Mann Report at ¶ 71.)  To support this facially self-contradictory argument, Walker argues that because the fee for entering into a credit account can be calculated to be zero under the Court's construction, the absence of any upfront fee from the Card Lab accounts is a fee for entering into a Card Lab account.  (*Id.*)  This argument lacks any merit.  As Walker interprets the Court's construction of "price," it would be impossible for any credit account not to satisfy it.  All credit accounts either 1) have fees for

entering into them or 2) do not have fees for entering into them.  Walker's interpretation of

"price" to include both types of credit accounts thus improperly renders the term "price" utterly

meaningless.  *See Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (claim

limitation should not be construed to render it meaningless); *Bicon v. Straumann Co.*, 441 F.3d

945, 951 (Fed. Cir. 2006) (same).  This fundamental deficiency in Walker's construction results

from Walker's failure to distinguish between the absence of a fee and a fee that has been

calculated to be zero in certain cases.  Under Walker's theory, everything that can be imagined

has a fee associated with it, because if there is no fee then that is a fee of zero.  Taking a nap, for

example, has a fee under Walker's theory (a fee of zero) because it does not have a fee.  This is

an absurd reading of the Court's construction of "price" that cannot possibly be correct.

Since an upfront fee played no role at all in Card Lab, and was not a parameter of any

account offered through Card Lab, there was no "fee of zero" for entering into a Card Lab

account.  Rather, as Walker has stated many times, *there was no fee for entering into a Card Lab

account.*

### C.  Card Lab Did Not Satisfy the "Price" Terms Under the Doctrine of Equivalents

To date, neither Walker nor its experts have argued that any aspect of Card Lab (e.g., an

annual fee or the absence of an upfront fee) is the legal equivalent of a fee or credit for entering

into a credit account, based on the credit or account parameters (i.e., a "price" as construed by

the Court).[6]  If Walker puts forth such an argument in its supplemental brief, the Court should

disregard it.  *See* Fed. R. Civ. P. 16(f), 37(b)(2), & 37(c)(1) (as sanction for discovery non-

---

[6] In his Expert Report, Ronald Mann argues that computing an account parameter other than an annual fee (e.g., an APR) when a user has already selected an annual fee is equivalent to computing an annual fee when the user has selected other account parameters.  (Mann Report at ¶¶ 76-78.)  In essence, Mr. Mann argues that an interest rate and other account parameters are equivalent to an annual fee.  This argument has no merit, but is, in any event, irrelevant to this summary judgment motion.  As Capital One has shown, an annual fee is not a price under the Court's construction.  Thus, if Mr. Mann is correct that other account parameters are equivalent to an annual fee, then all he has shown is that those account parameters are also not a "price" under the Court's construction.

compliance and violation of orders, courts may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"); D.I. 23 & 32 (requiring Walker to put forth its infringement contentions, including its contentions regarding infringement by equivalents, "as specifically as possible" on or before April 14, 2010); *O2 Micro*, 467 F.3d at 1366-67; *Safeclick*, 208 Fed. Appx. at 833-36; *see also Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667-70 (E.D. Tex. 2007) (allegations of infringement by equivalents in infringement contentions must anticipate foreseeable claim constructions).

## II.   CARD LAB DID NOT SATISFY THE CALCULATION LIMITATIONS OF THE ASSERTED CLAIMS

The Court construed the limitations "calculate a price" and "calculating a price" (one of which is present in each Asserted Claim) to require the "computation" of a price, and rejected Walker's view that these limitations require only the "ascertainment" of a price. The Court explained that "the claims consistently use the term 'calculate' to mean that the invention uses a computation to determine a fee for the customization of a credit account" and that this computation requires the use of "pre-established criteria" to "generate a 'price'" for a customized account. (Markman Order at 15.) Separate and independent from the fact that Card Lab did not satisfy the "price" term found in each Asserted Claim, Card Lab did not infringe because it did not *compute* either of the alleged "prices" (i.e., an annual fee and the absence of an upfront fee).

### A.   Card Lab Did Not Compute an Annual Fee

The accused Card Lab configurator was a graphical user interface that helped users filter through predesigned Capital One credit accounts, with predetermined sets of terms, to arrive at a single account having terms of their choice. (*See* MSJ Mem. at 2-6.) Card Lab itself did not generate the annual fee – or any other term for that matter. Rather, as Walker admits, the annual

8

fee and all of the other terms of each predesigned Card Lab account were predetermined by Capital One's financial team.  (Opp. at 2-3.)[7]  This designing of the accounts that would be offered through Card Lab was done long before and without the involvement of the accused configurator.  Card Lab simply looked them up in an electronic database.[8]  The same 155 credit card accounts that existed before a consumer operated the Card Lab software existed in exactly the same form after Card Lab was used.  Even if an annual fee is a price, or the absence of an upfront fee is a price (which they are not), those aspects of each of the Card Lab accounts were completely unaffected by operation of the Card Lab tool.  Despite these undisputed facts, Walker contends that Card Lab computed the annual fee.

According to Walker's latest theory, the process of searching the set of predesigned Card Lab accounts for accounts having user-selected terms amounted to a "computation" of the terms of those accounts.  Walker couches this strained argument in lofty sounding language from abstract mathematics.  In particular, Walker argues that Card Lab performed the "set union" of terms selected by a customer with the predetermined terms of Card Lab accounts, and thereby computed which account terms remained available.  (Hartman Decl., Exh. C (June 16, 2010 Expert Report of Richard E. Korf ("Korf Report") at § 2.2.)  Walker's abstractions into set theory are a needlessly (and purposefully) complex way of expressing the simple fact that Card Lab searched for the customer-selected terms among the predesigned Card Lab accounts, filtered out any accounts lacking those terms, and displayed only the terms present in one of the

---

[7] In its Opposition, Walker responds to Capital One's statement of undisputed fact that "all of the cards in the Products File, including each card's specific set of terms, were designed and approved by Capital One credit officers before they were made available to the public through Card Lab" with a stream of non sequiturs.  (Opp. at 3.) Walker does not – and cannot – dispute that dispositive fact.

[8] See, e.g., Am. Infr. Contentions at 12-14 (noting that there was a universe of 155 possible credit card accounts stored in the file products_v4.1.xml and that the terms of these accounts were stored in the file options_v4.1.xml, and describing how the Card Lab configurator looked up these accounts and terms in the products and options files to perform the activities accused of infringement).

remaining accounts.  (Shamos Decl. at ¶¶ 6-7; Am. Infr. Contentions, *passim*.)[9]  Even Mr. Mann

admits that what Dr. Korf claims to be the computation of a fee in Card Lab is simply

"CardLab's process for identifying responsive accounts."  (Mann Report at ¶ 71.)

Dr. Korf's theory of infringement by set theory operations is meritless for at least two

reasons.  First, none of the accused Card Lab code actually used set theory operations.  Capital

One attached the accused code as an exhibit to its Reply.  (*See* MSJ Reply, Malloy Decl.

Exh. B.)  The Court can see for itself that there are no set theory operations; certainly, Dr. Korf

has not identified any such operation actually in the code.   Second, looking up predetermined

terms in a database is not a computation of those terms, regardless of whether such looking up

can be expressed abstractly in terms of set theory operations.[10]  (Shamos Decl. at ¶¶ 5-9.)  In its

Markman Order, the Court explained what it means to compute a price.  The Court stated that a

"computer program intended to *generate* a 'price' *for* the customization of the accounts would

need to have some pre-established criteria for determining *how each modification* of the credit

parameters would affect the final price."  (Markman Order at 15 (emphasis added).)  The Court

added:

> It is clear from the Walker Patents that every 'calculation' conducted to determine
> the price is done with reference to the account parameters.  This is critical,
> because without this limitation almost any type of computation could be read into
> the patent, when it is clear that *it is the interplay between the various account
> parameters that is to be calculated when determining the price*.

---

[9] Strikingly, Walker's Amended Infringement Contentions contain no discussion of the set theory operations that have become the basis for Walker's infringement theories.  In the Contentions, Walker describes the accused Card Lab activities purely in terms of simple actions like retrieving information from an electronic file and comparing it and filtering it.  *See*, *e.g.*, MSJ Mem., Malloy Decl. Exh. C at 13-14.  Not until it was faced with the prospect of losing on its proposed construction of "calculate" to mean "ascertain" did Walker begin its efforts to confuse and complicate matters with its set theory arguments.  (*See* Opp. at 25-27 (the first time Walker raised its set theory arguments).)

[10] Indeed, as Capital One has argued in previous briefing, the patents in suit disavow cards with predetermined collections of terms from the scope of the Asserted Claims.  (*See* MSJ Mem. at 25-26, 27-28; MSJ Reply at 13-14.)  For this reason alone, Capital One is entitled to summary judgment of non-infringement.

(*Id.* at 16 (emphasis added).)

Card Lab did not contain "pre-established criteria for determining how each modification of the credit parameters would affect the final price."  All criteria for determining the terms of the Card Lab accounts were applied by Capital One in the process of designing the set of predesigned credit accounts offered through Card Lab.  Card Lab itself could not and did not modify any credit parameters of a credit account and did not have criteria to do so; it contained only the predesigned credit accounts with their predetermined terms.  Walker has not pointed to any such "pre-established criteria" in the source code of the Card Lab tool.  Nor did Card Lab compute "the interplay between the various account parameters . . . when determining the price."  When a customer selected a desired term, Card Lab simply looked up which predesigned accounts in an electronic database had that term, and removed cards missing that term from the cards available to the customer.  Any assessment of "the interplay between the various account parameters" was done well in advance of loading those predesigned accounts into Card Lab – and it was done by Capital One's credit executives, not by the Card Lab filtering tool.  Thus, Card Lab did not generate the price based on each modification of the credit parameters.

Indeed, Walker has not pointed, and cannot point, to any portion of the Card Lab code that contains instructions for generating a price based on the interaction of different account parameters.  Instead, Dr. Korf states:

> [F]or each . . . pair of an account parameter and a credit account identifier in the temporary products array, the [Card Lab] system iterates through the credit account identifiers in the Options File corresponding to that account parameter, to see if the credit account identifier from the temporary products array is found among the identifiers of the credit accounts having that account parameter in the Options file.

(Korf Report at 7.)  Note that even Dr. Korf here acknowledges that Card Lab looked for "credit accounts having that account parameter," not that it calculated prices for customized accounts.

In "iterating through" account identifiers to find a "corresponding" account parameter, Card Lab did not assess the interplay between account parameters, nor did it generate a price based on a modification of account parameters.  All that Card Lab did was look up predesigned credit accounts having the customer-selected account parameter.  Consequently, Card Lab did not compute a price.  To hold otherwise would read "almost any type of computation . . . into the patent," which the Court specifically warned against.  (Markman Order at 16.)

In sum, the annual fee, if any, for each Card Lab account was predetermined by Capital One when it designed those accounts, and was not computed by Card Lab.  Even if the Court were to hold that an annual fee is a "price" within the meaning of the Asserted Claims, Card Lab did not infringe any of the Asserted Claims because it did not compute the annual fee.

### B.    Card Lab Did Not Compute the Absence of an Upfront Fee Based on the Credit or Account Parameters

As discussed above with respect to the "price" terms, Walker has argued in its briefing and in the Mann Report that the absence of an upfront fee from Card Lab constitutes a "price" within the meaning of the Asserted Claims.  Strikingly, nowhere to date has either Walker or its experts argued that Card Lab calculated, or computed, the absence of an upfront fee, based on the credit or account parameters.[11]  That is not surprising, because Card Lab did nothing whatsoever with respect to an upfront fee; to the contrary, Capital One's credit team decided that the Card Lab accounts would not have upfront fees.  (*See* Mann Report at ¶ 71.)  As such, Card Lab no more calculated the upfront fee (or lack thereof) than it calculated the distance to Mars.

---

[11] Walker's expert, Mr. Mann, necessarily acknowledges that the terms of the accounts offered through Card Lab were determined as a "business decision" of Capital One, not by the Card Lab software.  He states:  "the limitation of the set of accounts available on CardLab to accounts with an up-front price of zero reflects Capital One's business decision to offer only accounts that require no up-front payment."  (Mann Report at ¶ 71.)  Nevertheless, Mr. Mann states, without any support, that Card Lab "calculates" such an upfront fee.  (*Id.* at ¶ 72.)  Mr. Mann claims that he "rel[ies] on the Korf report for discussion of how CardLab's process for identifying responsive accounts 'computes' the fee or credit" (*id.* at ¶ 71), but Dr. Korf only argues that Card Lab computes an annual fee, not an upfront fee of zero, through its supposed set theory operations (Korf Report at § 2.2).

Furthermore, it goes without saying that Card Lab did not calculate the upfront fee *based on the credit or account parameters*, since the absence of an upfront fee was common to every Card Lab account, and thus was completely independent of the account parameters and was unaffected by the operation of the Card Lab software.  For these reasons, even if the Court were to hold that the absence of an upfront fee is a "price," Card Lab did not infringe the Asserted Claims because it did not compute the absence of the upfront fee, based on the credit or account parameters.

### C.   Card Lab Did Not Contain Any Equivalent to the Computation of a Price

Walker's fullest articulation to date of its theory that Card Lab infringed the calculation limitations under the doctrine of equivalents is a single sentence in the Korf Report:

> If Capital One's Card Lab system is found to not literally calculate a price for a credit account, then Card Lab calculates a price under the doctrine of equivalents, because Capital One's Card Lab system performed substantially the same function as "calculating a price" (computing a fee, i.e., an annual fee, which may be zero) in substantially the same way (computing an annual fee), to obtain the same result (an annual fee).

(Korf Report at 18.)  This is just a conclusory recitation of the function-way-result test for the doctrine of equivalents, which provides no factual basis or analysis supporting the application of the doctrine to Card Lab.[12]  Since Walker has put forth no support for its bare allegation that Card Lab infringed the calculation limitations by equivalents, summary judgment for Capital One is required.  *Dumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1365 (Fed. Cir. 2007) ("[Appellant] offered the declaration of its engineering expert that stated in conclusory fashion that the ways the two different openings operated were not 'significantly different.'  However, the declaration did not explain how either opening operated or how the differences were insubstantial.  We have repeatedly held that such cursory conclusions will not withstand

---

[12] By contrast, Capital One detailed affirmative bases for why Card Lab did not infringe the "calculation" limitations under the doctrine of equivalents in its opening summary judgment brief.  *See* MSJ Mem. at 28-30.

summary judgment."); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382 (Fed. Cir. 2007) ("To avoid a grant of summary judgment of non-infringement by equivalents, the patentee must present 'particularized evidence and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device, or with respect to the function, way, result test.'" (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).

### III.   EVEN IF THE ABSENCE OF AN UPFRONT FEE IS DEEMED TO SATISFY THE "PRICE" AND "COMPUTATION" LIMITATIONS, CARD LAB DID NOT SATISFY THE OUTPUT AND PROPOSAL LIMITATIONS OF THE ASSERTED CLAIMS

In its reply brief, responding to Walker's newly raised opposition argument that the absence of an upfront fee from Card Lab accounts was a "price," Capital One stated:

> All of the Asserted Claims of the '478 patent require the output of a price, and all of the Asserted Claims of the '230 patent require the submission of a proposal including the price to a customer.  But Card Lab does not output or submit a proposal that includes $0.00, and nowhere does Walker contend that it does.

(MSJ Reply at 17 (internal citation omitted).)  That remains true at the time of this filing. Neither Walker nor its experts have cited any facts or put forth any theory for how Card Lab outputs or submits a proposal that specifies the absence of an upfront fee, as the Asserted Claims require.  Walker's failure to do so is no surprise given that upfront fees were not part of Card Lab in any way, shape, or form.  For these reasons, Capital One is entitled to summary judgment that Card Lab did not infringe the Asserted Claims because it did not output or submit a proposal that included the absence of an upfront fee.

### CONCLUSION

For the foregoing reasons, and the reasons stated in its opening and reply summary judgment briefs, Capital One respectfully requests that the Court grant summary judgment of non-infringement to Capital One.

14

Dated:  June 24, 2010                                        Respectfully submitted,

                                                            /s/ John P. Corrado
                                                            John P. Corrado (VSB# 20247)
                                                            Joshua A. Hartman (VSB# 77894)
                                                            MORRISON & FOERSTER LLP
                                                            2000 Pennsylvania Avenue NW
                                                            Washington, D.C. 20006
                                                            Telephone:  (202) 887-1500
                                                            Facsimile:   (202) 887-0763
                                                            JCorrado@mofo.com
                                                            JHartman@mofo.com

                                                            Charles S. Barquist, *Pro Hac Vice*
                                                            Ryan J. Malloy, *Pro Hac Vice*
                                                            MORRISON & FOERSTER LLP
                                                            555 West Fifth Street, Suite 3500
                                                            Los Angeles, CA  90013
                                                            Telephone:  (213) 892-5200
                                                            Facsimile:  (213) 892-5454
                                                            CBarquist@mofo.com
                                                            RMalloy@mofo.com

                                                            Attorneys for Defendants
                                                            CAPITAL ONE SERVICES , LLC;
                                                            CAPITAL ONE BANK (USA), N.A.; and
                                                            CAPITAL ONE FINANCIAL
                                                            CORPORATION

## CERTIFICATE OF SERVICE

I, John P. Corrado, hereby certify that on this day, June 24, 2010, I will electronically file the foregoing document, **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF CAPITAL ONE'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT,** using the CM/ECF system.

Copies of the same will be sent via electronic mail to:

Robert Carter Mattson
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT LLP
1940 Duke Street
Alexandria, Virginia 22314
Telephone:  (703) 413-3000
Facsimile:  (703) 413-2220
RMattson@oblon.com

Roderick G. Dorman
Thomas B. Watson
Alan P. Block
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234
DormanR@hbdlawyers.com
WatsonT@hbdlawyers.com
BlockA@hbdlawyers.com

/s/ John P. Corrado
John P. Corrado (VSB# 20247)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763
JCorrado@mofo.com